Let's call the next case. First case of the morning, excuse me. On 14-1960, Field Police Court v. Patrick Wright. Counsel, you may proceed. Howard Aiken for the State of Patrick Wright. May it please the court, call the counsel, if I could reserve five minutes in reply. Thank you. The decision of the commission should be... Counsel, who are you? Howard Aiken, A-N-K-I-N, for the appellant, for the State of Patrick Wright. The decision of the commission should be given substantial deference and the decision should not be overturned by the circuit court who is acting to substitute its own decision in favor of the commission. ...which didn't stay tight and he felt that occurred on October 31st, 2008. He basically went to a doctor who was assigned to him by his employer. He received conservative care the entire time and then was released on October 17th, 2009. At that time, there was a functional capacity exam that was performed, which showed that this gentleman that was in his mid-60s could no longer go back to his job as an over-the-road truck driver, which is a job that he held for over 30 years. At that time, the respondent began to make payments, which the check that went out was titled TTD. But we know from that time, based on his functional capacity exam and based on facts contained in the medical records, that he could no longer go back to his job on August 17th, 2009. A couple of quick questions just to clarify. The claimant's position is he acknowledges he was not entitled to receive TTD benefits after he reached MMI on August 17th, 2009, but he is seeking to receive maintenance benefits during that time. Is that correct? The commission ruled that he was actually receiving maintenance under Section 8D1 of the Act. He was not an on-law total permanent because his functional capacity exam had him going back to doing some type of work, but yet he couldn't go back to his original job. So what the commission ruled is that he was receiving maintenance benefits under Section 8D1. A week then prior to trial, the petitioner then, under the Act, declared his rights to receive an 8D award instead of receiving an 8D1 award and officially filed to ask for an 8D award to be provided to him. Now, didn't the arbitrator rule that the claim for maintenance or vocational rehabilitation would waive? Well, they said... And if so, why did they rule that way? The commission itself ruled that it was an 8D1. I don't know that we're reviewing with the arbitrator. I don't know that we're reviewing... No, but the commission then affirmed the arbitrator's finding and adapted the arbitrator's finding, didn't they? Correct. So what they said in that decision is that neither the petitioner nor the respondent asked for maintenance benefits under the Act. The reason being is that this was a 66-67-year-old petitioner, so the concept that the petitioner would be asking for vocational rehabilitation in his mid-60s didn't seem to be something that the commission would be granting him benefits for vocational benefits. So the respondent still was paying benefits under Section 8D1 to determine what their desires were. As the claim kind of dragged out over time because the petitioner did have some other medical complications during that course, it was then a week prior to trial, but then the petitioner then said, okay, it can't be an odd lot. It's not an 8D. As an 8D1, we're concerned here that we haven't had like a job log and we're concerned about getting an award under 8D1. So the petitioner converted the 8D1 status of the case to an 8D in order to conform... ...because it wasn't asserted before the commission. Well, there is nothing to weigh. The commission found, okay, and at this point, you know, a reviewing court should not be substituting their judgment. The commission found that there was actually 8D1 benefits that were being provided, and the record has enough facts to substantiate the fact that 8D1 benefits were being provided at the time. So the commission then declared that since this is an 8D1, they were saying, okay, it's okay now that we are converting this back to an 8D. And they said on the date that it was converted, the 8D1 was converted back to an 8D, that's when benefits were stopped. And in fact, the respondent appellee agreed with that because on the date that the 8D1 to 8D motion was filed with the commission and served on the appellee respondent, that's actually when the benefits did stop to Mr. Wright. So they also agreed that that was what was occurring. So basically here, the commission who should be given substantial deference has basically said that they looked at the record, they looked to see what was happening, they agreed that there was 8D1 benefits that were being provided to Mr. Wright. They agreed that on the day that Mr. Wright filed for his 8D1 benefits to be converted to 8D benefits, that that's the day that those benefits should stop, those benefits were stopped. When are you entitled to maintenance benefits? You're entitled to maintenance benefits under the Act. Technically, within four months of the time that it is shown that you, like, during the course of your treatment, I think the Act actually shows that within four months of it, if it's going to be shown that within four months of the time that you cannot go back to your prior occupation, that it's incumbent upon the respondent to start you with some type of vocational retraining or new vocational benefits. Excuse me, he never sought maintenance benefits, he never engaged in a job search, and he wasn't engaged in any program. And doesn't the Act say that you get maintenance benefits only while the claimant is engaged in a job search or engaged in some rehabilitation or vocational program? The problem here was that one, the petitioner was 66, 67 years old. Excuse me, doesn't the Act say that maintenance benefits are paid only when you're engaged in some type of job search or vocational rehabilitation program? Does it say that? Because your client never was. That may be true, but that's not what the Commission thought about this case. I don't care what the Commission thought, because the trial court reversed them. The trial court reversed them on that issue. So the question becomes, if your client was never entitled to maintenance benefits under the Act, what's wrong with the trial court's reversal of their award? Well, there was a question then at that time, though, also, that this particular petitioner was awarded 25 percent, and that is a whole. So at a time when he was not ever going to go back to work again. So also contained within the record is the fact that the Commission could have thought that the equivalent amount of PPD or TTD or maintenance benefits that were paid, okay, was the equivalent of 40 percent of a man. So the Commission also, within the record, when they – Mr. Rankin, that's the most confusing thing I've ever heard. My question is an easy question. Okay. Under the Act, was your client ever entitled to maintenance benefits, yes or no? My client was entitled to maintenance benefits. Why? Let me just say this in reverse. The issue of PPD – or the issue amount of PPD that my client was entitled to get is intertwined with the amount of maintenance or the amount of – with the amount of maintenance or advanced PPD benefits that he was receiving. The reason being is because when the Commission is making their ruling, they're saying that there was a ruling for 25 percent man as a whole that they were awarding him. So to only look at the maintenance benefit in and of itself and not looking at the maintenance benefit without looking at how much PPD that my client was awarded is segmenting out what his total benefits were to him, and that would not be fair to him. What the Commission, I believe, was looking at is they were saying that he was getting 25 percent of a man and that the amount of benefits that he was getting was 40 percent of a man. So it depends on the time that you are looking at when the benefits are given. It's a pretty simple case, isn't it? MMI, TTD stops, right? That's true. Okay. And then you go for a preeminency award, right? If you look at this at the time of August 17, 2009, and you look at that date, then on that date, my client would be awarded something like 60, 65 percent of a man. That would be his PPD award. And so if you're looking at it at that time, at August 17, 2009, 60, 65 of a man, and then he's getting benefits up to the time that the case was tried, okay, some years later, that's about 40 percent of a man in advanced PPD rates. So then the decision of the Commission works out in the math that way. How the Commission looked at their math was, though, is that they were looking at this being an 8D1 payments to the petitioner. And then on the date that the case was tried, they were saying, okay, you converted it at that time from 8D1 to 8D. And then they just said, okay, at that time, we're converting this and we're making it 25 percent of a man. I believe the Commission was looking at this particular case to Mr. Wright based on the totality of how much maintenance benefits he was getting and how much permits he was getting. So they're really rewriting the act? I don't know that they're really rewriting the act. I think what they were saying is they believe that it was, I think they believe that this was proper of them as an 8D1 award or converting it to an 8D. The Court of Equity. What? Called the Court of Equity. Well, the Commission in their province, though, is allowed to decide what benefits somebody should get and make a decision that would be fair to all, you know, to the petitioner. But they had to do it according to the act. Your client said during that period of time he was retired, right, in Pennsylvania? Yes. Okay. When he said he was retired, that was a period of time that he said he was retired. That was two years later after August 17th, 2009. At the time you were saying he should get maintenance. At the time that he was already receiving then a PPD award or something, right? I'm confused here. You're amusing me. I'm not real smart, but you're going to have to take this real slow. The arbitrator awarded the man 25% of the man as a whole, didn't he? Yes. And the Commission affirmed that. Correct. Where do we get 40% of the man as a whole, 60% of the man as a whole? Did you make that up or did you just work some figures and say, well, they must have given him 60% of the man as a whole because they gave him maintenance? Is that your argument? No. What I'm saying to you is that when the Commission made their decision, the decision that they made was on the date of trial, which was within a week at the time that the petitioner converted from an 8D1 to an 8D award. The Commission's ruling was now that you've converted this from an 8D1 to an 8D award, but now that's when your maintenance benefits stop. Now this is when you get permanency. Excuse me. He was never entitled to maintenance benefits. He just simply wasn't entitled. He had an award for 25% of the man as a whole. Nobody gave him more than 25% of the man as a whole on a permanency award, did they? No. Is that a yes or a no? You are correct. Okay. What I'm saying is that when you're looking, if you are just segmenting out, if you're looking at this at the time that the case is tried, it's a different viewpoint than if you're looking at the case back on August 17, 2009. And so the amount of benefits, if you are looking at this back on August 17, 2009, and you were saying how much permanency would somebody be entitled to, the amount of advanced PPD that was paid out from August 17, 2009 until the time that the case was tried, that's the equivalent of 40 of a man in advanced PPD benefits. So it's about 60, 65 of a man. That's the same as like the Gallinetti case, which the appellee respondent is basically citing as authority in their case. That's the same amount of permanency that that particular petitioner was awarded. So to look at this as permanency and maintenance as two totally separate distinct things, you need to look at it at the time that you're awarding it. If you're looking at it on August 17, 2009 on the date that the functional capacity exam says that you can't go back to work, the petitioner would be entitled to 60, 65 of a man. Now there's all this advanced PPD benefits. This is like stirring up a puddle and making mud out of it. The issue in this case was this man was at MMI on August 17, 2009. Is that correct? Yes, sir. That's when his TTD stopped. Correct. Not entitled to any TTD. And he goes to an arbitration hearing on November 15, 2012. Is that correct? Yes. He was paid TTD benefits from August 17, 2009 to November 15, 2012 during a period with which he wasn't entitled to any TTD. So what's wrong with giving the employer credit for the overpayments during that period of time? Because it was labeled TTD, but it couldn't be TTD. The commission was saying what they labeled TTD, it can't be TTD. Right. Okay? It can't. So it was either he was an 8D1, meaning that he couldn't go back to his former job, or, okay, he was an ABAP 12 permanent. It was one of those two. And the commission in their decision ruled that he was an 8D1. That's what they ruled in their decision. Is he being paid for 25% of a man as a whole? Well, with the credit, he wouldn't be paid that. That's why the commission said he gets those maintenance benefits. Well, they can't give him maintenance benefits if he's not entitled to maintenance benefits. I mean, this is where the problem is. Counsel, your time is up. You'll have time on the clock. Thank you. Counsel, you may respond. Good morning, Your Honors. Counsel, Daniel Sarger on behalf of People East, the appellee. The case is fairly simple. Petitioner reached MMI August 17th. If you can make it simple, sir. 2009. I'm going to be in your debt. August 17th, 2009, he reached MMI. His entitlement to TTD ceased at that point. Under the Act. Under the Act. Okay. Following August 17th, Respondent continued to pay him benefits. Benefits that he has no legal right to recover. Or were they labeled as TTD? They were labeled as TTD. Not as maintenance. Not as maintenance. Respondent was apparently paying as an oddball perm total because there's no evidence introduced at any time that has any sort of credibility to show that Mr. Wright was ever going to go back to work. Based upon his age, his past medical history prior to the accident, this accident, then if you include some of his subsequent incidents, he simply was not going to go back to work. What he's trying to do now is to essentially double dip. He's trying to say, you paid me all this money as what would a lot to a perm total. Can I try and make this easy? Yes. All right. He's not entitled to TTD after August 17th, 2009. Correct. But you paid him between August 17th, 2009 to November 15th, 2012. Right? I believe that's the date here. Okay. Yes. Now, those are overpayments of a period of time in which he's not entitled to TTD, he's not engaged in any job search, or he's not entitled to maintenance. There's no rehab. Correct. Now, when do you pay him for 25% as a man as a whole? Based upon the act, we should be given a credit for that overpayment. No, we understand that. He's already gotten paid for it with that overpayment. So the overpayment wipes it out? Yes, Your Honor. Okay. But he did lose the $132,000 of money that he never had a legal right to recover. I understand that. What's your argument? So the fact that he was never entitled to any sort of perm total awards because he waived all of this. He says, I don't want benefits under 8D2. I want benefits for a man. Yeah. Go ahead. So when the Commission awarded the – and the Commission never awarded any sort of maintenance benefits under 8D1. It's clear in their decision. It says, Petitioner is entitled to temporary and total disability benefits up to the date of hearing. There's no award for maintenance benefits. There's no award for perm total benefits. They used the wrong legal standard in this, misapplied facts, misconstrued some of the facts in their decision when there simply was no basis. This case is fairly simple. After August 17th, he should not have been paid any benefits. The fact that he was incorrectly paid benefits by my client, they should not be punished for that, but the Act allows a credit. If they had terminated benefits at that point, they would have been subject to various penalties and determinist fees based upon the very nature that it requires to start paying benefits and continue to pay benefits in a timely fashion, which they believed they were doing. So Petitioner sat for three years receiving these benefits. When his health declined to the point he realized he was never going to get any sort of big lump sum payment, changed his theory of what his injuries really were, and is now trying to double-dip, seek a windfall for what he should be entitled to do. That's why, Your Honor, I said ask that you uphold the Circuit Court's decision and essentially uphold what the arbitrator found in this case. Thank you, Counsel. Counsel, you may – Can I ask one question? Yes. How was the $132,369.52 computed? Is that TTD benefits that were paid between August and November? Yes, it would be. When he reached MMI until the date of hearing? We need to check if it was the date of hearing or if it was the date that he filed the formal election, but it was up through sometime November 2005. The formal election was at the hearing, wasn't it? No, that's what the commission is concerned. He filed the formal election a week before the hearing. Okay. A week. So $132,369.52 is not anything other than the amount from date of MMI to the date of election. Nothing else is added in there. Is that what the math comes out to? I believe that's what the math should come out to. Okay. All right. Any other advice, sir? If it's true that the petitioner was receiving ad lato permanent benefits, then it would be no windfall to the petitioner that he was only receiving, at the conclusion of his case, 25% of a man as a whole for what the equivalent is of an ad lato permanent injury. So the commission in its decision here was basically saying for somebody that would have such a substantial injury, they were, instead of providing a higher permanency award, they were just basically looking at both the maintenance and the permanency together and basically saying, okay, at the time that maintenance stopped, now we'll say you are now entitled to get your 25% of a man. However, by supplementing out the maintenance itself and only keeping the 25% of a man, in this regard now there would be a credit because at 25% of a man, that would be a very low award for somebody who was an ad lato permanent and then this petitioner would recover a very small amount of benefit. Who found him to be an ad lato permanent total? Nobody. That's why the commission was saying it was an AD1 when it made its ruling and that's why it said then on the week before trial when you convert it from the AD1 to the AD, that's when the maintenance stops and then the 25% of a man would kick in. But to look at it from what was happening on August 17, 2009, which is how the circuit court was reviewing this decision, then it went back and said, okay, if that's the date, but if that's the date that they reviewed it on, they reviewed it at that, but then this ad lato permanent petitioner would only be getting 25% of a man and that is not what the holding is of the commission and that's not what they intended their decision to be. Their decision intended to be, when you back out the numbers, their decision intended to be that this particular petitioner would get 60-65 of a man. If that's what they intended, why didn't they say that? They didn't say that. Well, they did. They just basically said we'll pay you benefits up to the day that you convert it from the AD1 to the AD. Is it perfect? It may not be perfect, but in looking back at a review in court, is there enough in the record to say that this is okay? And there is enough in the record to say that the commission did make a legal basis for the decision that could be filed in the record. Would we have liked it to be a different decision as a review in court? Maybe we would have liked to have had more in there, but there's enough in there to say that the commission, who has the province of doing justice within their tribunal, was doing justice here and that's why they ruled this way. And that's why I would ask you to reaffirm the decision of the commission and let these maintenance benefits go through to the August 17, 2009, as ruled. Thank you. Thank you, counsel. Thank you, counsel, both, for your arguments. This matter will be taken under advisement and a written disposition shall issue.